# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 10-03686-TLM |
| JARRELL W. GUNSTREAM, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| AIRPORT PARTNERS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 11-06008-TLM |
| ) | |
| JARRELL W. GUNSTREAM, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

Plaintiff Airport Partners, LLC ("Airport Partners") filed a motion for partial summary judgment in this adversary proceeding under Fed. R. Civ. P. 56 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056), seeking partial summary judgment on its claims under § 523(a)(4) and (6).[1] Doc. No. 28

---

[1] Unless otherwise indicated, all statutory citations in this Decision are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules
(continued...)

MEMORANDUM OF DECISION - 1

("Summary Judgment Motion"). Debtor responded to the Summary Judgment Motion and filed a motion for stay of the adversary proceeding. Doc. No. 32 ("Stay Motion"). The Court heard both matters on December 12, 2011, after which they were taken under advisement.

For the reasons set forth below, the Court will deny Debtor's Stay Motion and grant Airport Partners' Summary Judgment Motion.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Debtor Jarrell Gunstream was the sole, managing member of Gunstream Commercial Real Estate, LLC ("Gunstream Commercial") in 2007. In March 2007, Gunstream Commercial entered into a management agreement with Airport Partners whereby Airport Partners retained Gunstream Commercial to manage and lease property owned by Airport Partners, referred to as the Holly Plaza Shopping Center, in exchange for a fee. Gunstream Commercial was to collect rents, pay expenses associated with the property, and then remit the net to Airport Partners.

Facing mounting financial difficulties, Debtor began transferring money from an operating account he had opened for the Holly Plaza property into other Gunstream Commercial accounts in order to cover business expenses unrelated to

---

[1] (...continued)
of Bankruptcy Procedure, Rules 1001-9037.

[2] The undisputed facts are gleaned from the submissions of Airport Partners, Doc. Nos. 29, 31, and Debtor, Doc. Nos. 33, 40.

MEMORANDUM OF DECISION - 2

the Holly Plaza property. Neither Gunstream Commercial nor Debtor had received authority from Airport Partners to make such transfers. During this time, Debtor provided Airport Partners with periodic financial reports that accurately reflected the gross revenue received and expenses paid for the Holly Plaza property, but did not show Debtor's unauthorized transfer of funds out of the Holly Plaza property account. As a result, the reports did not indicate the true balance in the Holly Plaza account, but instead showed what funds would have been in the account had Debtor not made the unauthorized transfers.

This conduct continued until June 1, 2009, when Debtor met with Stuart Nibley, the managing member of Airport Partners, to admit his unauthorized use of the Holly Plaza funds. At that time, Debtor also provided Mr. Nibley with a letter in which he admitted to the transfers and expressed his intent to repay what he had taken. *See* Doc. No. 29-1 at 26. Debtor characterized his conduct as unauthorized "borrowing" of the funds. He claimed to have transferred funds back into the Holly Plaza account from other Gunstream Commercial accounts, but at the same time acknowledged that those payments were $117,271.76 short of what was needed to replace all the funds he had transferred out of the account. *Id.* Mr. Nibley and Debtor agreed that thereafter Debtor would send all rent checks to Mr. Nibley directly, rather than depositing the checks into the Holly Plaza operating account.

MEMORANDUM OF DECISION - 3

On June 4, 2009, just days after meeting with Mr. Nibley, Debtor received a $8,648.27 rent check from Deseret Industries, a tenant in the Holly Plaza property. Instead of forwarding the check to Mr. Nibley, as had been discussed, Debtor had it deposited and again used the proceeds to pay business expenses unrelated to the Holly Plaza property.

On June 22, 2009, Airport Partners filed a state court lawsuit against Gunstream Commercial, Debtor, Georgia Bowman-Gunstream, Monique Keck, and Kim May, asserting claims of fraud, conversion, and unjust enrichment.[3]

Sometime after the June meeting with Mr. Nibley, Debtor, either acting in his capacity as manager for Gunstream Commercial or personally, paid various invoices related to the management of the Holly Plaza property using Gunstream Commercial funds. In addition, Debtor relinquished four vehicles – one owned personally by Debtor and three owned by Gunstream Commercial – to Airport Partners as a partial payment.

On August 25, 2009, Gunstream Commercial was dissolved.

On July 10, 2010, the state court granted Airport Partners summary judgment on its conversion claim against Debtor, but only as to liability. The court concluded that an unresolved issue of fact remained regarding the amount of

---

[3] Georgia Bowman-Gunstream is Debtor's former spouse. She is not a debtor in the underlying bankruptcy case. Based on the submissions in this adversary, *see* Doc. 29-1 at 135 (state court complaint, attached to the Affidavit of Kevin Dinius as Ex. B), it appears that Monique Keck and Kim May were employees of Gunstream Commercial.

MEMORANDUM OF DECISION - 4

damages, which arose primarily from a dispute between the parties regarding the amount of offsets and credits to which Debtor was entitled.

On November 10, 2011, Debtor filed a chapter 7 petition for relief. Debtor listed Airport Partners in his schedules as an unsecured creditor with a disputed claim of $125,000.

Airport Partners filed this adversary proceeding to have its claim against Debtor, alleged by Airport Partners to be $63,595.82, declared nondischargeable under § 523(a)(2)(A), (a)(4), and (a)(6). Airport Partners by this Motion seeks summary judgment against Debtor on its § 523(a)(4) embezzlement claim and § 523(a)(6) claim, as to nondischargeability. It does not, however, seek summary judgment on its request for a monetary judgment establishing the amount of its claim, as counsel expressly noted at hearing.

Debtor responded to Airport Partners' motion with two affidavits, Doc. Nos. 33 and 40, one of which was filed the day of the hearing, and the Stay Motion under which he asks to stay the adversary proceeding or for additional time to respond under Fed. R. Civ. P. 56(d).[4]

---

[4] Because Debtor appears *pro se*, the Court has liberally construed his pleadings and papers. *See Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 883 (9th Cir. BAP 1995); *see also Woods v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008)*; Nilsen v. Neilson (In re Cedar Funding, Inc.)*, 419 B.R. 807, 816 (9th Cir. BAP 2009) (citing *Kashani*). It notes, though, that Debtor has done a credible job in identifying and addressing legal authorities, preparing and filing papers, and making argument.

MEMORANDUM OF DECISION - 5

## DISCUSSION AND DISPOSITION

### A. Debtor's Motion for Stay

Debtor seeks a stay of this adversary proceeding because a criminal investigation by the Idaho State Police is pending. According to Debtor, on June 30, 2009, he was served with a search warrant for the Gunstream Commercial business premises and his personal residence. During the search, the police removed all computers, servers, and hard copies of files related to Gunstream Commercial and Debtor's activities with respect to the same. This property remains in the custody of the Idaho State Police and the Ada County Prosecutor's office and, according to Debtor, is unavailable. Debtor states he does not know when the investigation will be concluded or when he will again have access to his files. Based on his inability to access these records and information, Debtor requests the Court stay this adversary proceeding and defer ruling on the Summary Judgment Motion.

#### 1. Stay of Adversary Proceeding

Ordinarily, stays of civil proceedings pending the outcome of criminal proceedings are not required. The Ninth Circuit has stated: "In the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting

*Sec. & Exch. Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). However, a court may decide in its discretion to stay civil proceedings "when the interests of justice seem to require such action." *Id.* As the Supreme Court explained,

> the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

When deciding whether to stay civil proceedings in the face of parallel criminal proceedings, courts should consider "the particular circumstances and competing interests involved in the case." *Keating*, 45 F.3d at 324 (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). While the relevant factors will vary from case to case, they generally include:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 324-25 (citing *Molinaro*, 889 F.2d at 903).

Consideration of these factors favors denying Debtor's Stay Motion. First, the Stay Motion is not timely. Debtor's records and files were seized in 2009, long

MEMORANDUM OF DECISION - 7

before this adversary was commenced. He had ample time and several opportunities during the course of this litigation, including at the pretrial conference, to raise the issues identified in the Motion, yet he waited until just days before the hearing on the Summary Judgment Motion to assert them. Second, the countervailing interests of Airport Partners in proceeding expeditiously with this litigation and of this Court in managing its docket by resolving matters before it in an efficient and timely manner militate in favor of denying the Stay Motion. Third, the materials Debtor claims he would be prevented from supplying to the Court – which largely concern his purported history of repaying large sums of money – may be relevant to his intent and ability to repay the debt to Airport Partners, but are not material to this Court's analysis under § 523(a)(4) and (6). As discussed further below, the facts material to this Court's nondischargeability determination have been admitted to and are effectively undisputed. Thus, there is no reason to defer ruling on the Summary Judgment Motion before the Court. The Debtor's Stay Motion will be denied.

### 2.  Rule 56(d)

Debtor has also asked the Court to defer ruling on the Summary Judgment Motion under Fed. R. Civ. P. 56(d).[5] Rule 56(d) provides:

---

[5] In his response and Stay Motion, Debtor seeks a deferral of the time to respond to the summary judgment motion under Fed. R. Civ. P. 56(f). In 2010, Fed. R. Civ. P. 56 was amended. The provisions of former subdivision (f) were carried forward without substantial change in

(continued...)

MEMORANDUM OF DECISION - 8

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

A party moving under Fed. R. Civ. P. 56(d) must set forth particular facts to be garnered through additional discovery and specify how those facts will prevent summary judgment. *Barona Grp. of the Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc.*, 840 F.2d 1394, 1400 (9th Cir. 1988) (applying Fed. R. Civ. P. 56(f)); *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 80 n.9 (Bankr. D. Idaho 2003) (same).

Debtor has not set forth the particular facts he would show through the seized documents, nor has he specified how those facts would prevent summary judgment. As noted above and discussed in more detail below, those facts which are material to the Summary Judgment Motion are not in dispute. Therefore, Debtor's request under Fed. R. Civ. P. 56(d) will be denied.

### B. Airport Partners' Summary Judgment Motion

#### 1. Summary Judgment Standards

> Summary judgment may be granted if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. The evidence and any inferences

---

[5] (...continued)
subdivision (d) of the amended rule.

MEMORANDUM OF DECISION - 9

> therefrom must be viewed in a light most favorable to the non-moving party. The court cannot and does not weigh evidence in resolving motions for summary judgment but, rather, determines only whether a material factual dispute exists requiring trial. A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is material if it might affect the outcome of the proceeding.

*Boise City/Ada Cnty. Housing Auth. v. O'Brien (In re O'Brien)*, 2011 WL 1457304, at *2 (Bankr. D. Idaho April 15, 2011) (citations omitted).

### 2. Establishment of the Debt

There are two distinct issues this Court considers in the dischargeability analysis: first, the establishment of the debt itself; and second, a determination as to the nature – dischargeable or nondischargeable – of that debt. This second issue, where a determination of dischargeability is sought under § 523(a)(2), (4), or (6), falls within the exclusive jurisdiction of the bankruptcy court. *Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)*, 263 F.3d 862, 868 (9th Cir. 2001).

Here, Debtor concedes the existence of a debt, even though the precise amount of that debt appears to be disputed. The amount of the debt, however, is not before the Court on this Summary Judgment Motion. That issue, to the extent it remains in dispute, will have to be decided at trial.

Notwithstanding his acknowledgment of the existence of a debt, Debtor's response to the Summary Judgment Motion suggests as a defense the argument that Debtor was acting as the managing member of Gunstream Commercial and

MEMORANDUM OF DECISION - 10

therefore he is not *personally* liable to Airport Partners. This argument is unavailing.

The issue of Debtor's personal liability was decided by the state court, which entered summary judgment in favor of Airport Partners and against Debtor, personally. This Court is to respect state court orders and judgments under the full faith and credit statute, 28 U.S.C. § 1738, and the principles of issue preclusion (at times also referred to as "collateral estoppel"). *See Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). However, to avail itself of the doctrine of issue preclusion a party is required to "introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Massie v. Pate (In re Pate)*, 262 B.R. 825, 828 (Bankr. D. Idaho 2001). Airport Partners chose not to assert issue preclusion in this case and consequently did not make this requisite showing.

Instead, Airport Partners argues that the undisputed facts establish Debtor is personally liable for his conduct. The Court agrees that, even if the state court judgment did not preclude consideration of the issue, the undisputed facts establish Debtor is personally liable for his embezzlement as a matter of law. As discussed by this Court in *Welch v. Laraway (In re Laraway)*, 2010 WL 3703272, at *5

MEMORANDUM OF DECISION - 11

(Bankr. D. Idaho Sept. 13, 2010),

> Corporate directors and officers may not be held liable for fraud or other tortious wrongdoing committed by the corporation or its officers merely by virtue of their office. *L.B. Indus., Inc. v. Smith*, 817 F.2d 69, 71 (9th Cir.1987). However, a corporate director or officer may be held liable if he specifically directs, actively participates in, or knowingly acquiesces in the fraud or other wrongdoing of the corporation or its officers. *Id.; see also See Bell v. Smith (In re Smith)*, 98.4 I.B.C.R. 119, 120 (Bankr. D. Idaho 1998); *Nelson v. Post Falls Mazda (In re Nelson)*, 159 B.R. 924, 925-26 (Bankr. D. Idaho 1993); *In re Hawkins*, 144 B.R. 481, 484-85 (Bankr. D. Idaho 1992).

The facts clearly show that Debtor actively participated in the misappropriation of the funds. Debtor either transferred or directed the transfer of the funds from the Holly Plaza operating account, and he was fully aware of the inaccuracies in the financial reports provided to Airport Partners. *See* Doc. No. 29-1 at 10-12 (Gunstream Dep. Tr., Oct. 6, 2011, attached to the Affidavit of Kevin E. Dinius as Ex. A), 26 (June 1, 2009, letter to Mr. Nibley), and 30-32 (Affidavit of Debtor from state court action, filed Jan. 26, 2010). Accordingly, he may be held personally liable for those acts.

The undisputed facts thus establish the existence of a debt owed personally by Debtor. The Court turns to the question of its nondischargeability under § 523(a)(4) and (6).

### 3. Nondischargeability

#### a. Section 523(a)(4) - Embezzlement

Airport Partners contends it is entitled to summary judgment on its

MEMORANDUM OF DECISION - 12

embezzlement claim under § 523(a)(4). Section 523(a)(4) excepts from an individual debtor's discharge, *inter alia*, any debt for embezzlement. In the nondischargeability context, embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991). Three elements are therefore required to show embezzlement: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud." *Id.*; *First Del. Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997).

The undisputed facts establish that Airport Partners' claim is nondischargeable as one for embezzlement under § 523(a)(4). As managing member of Gunstream Commercial, Airport Partners' agent for managing the Holly Plaza property, Debtor had rightful possession of the rent payments. That property, which belonged to Airport Partners, was entrusted to Gunstream Commercial and Debtor for the purpose of paying expenses associated with the Holly Plaza property, with the remainder to be remitted to Airport Partners. Debtor did not use the rents for this purpose, but instead used them to pay expenses of his own business. He did so without permission or authorization from

MEMORANDUM OF DECISION - 13

Airport Partners, and he concealed his activities by sending Airport Partners financial reports that omitted the unauthorized transfers. Indeed, Debtor has admitted, on more than one occasion, that what he did was wrong. *See* Doc. No. 29-1 at 15 (Gunstream Dep. Tr.), 26 (Debtor's June 1, 2009, letter), and 34-35 (Affidavit of Debtor from state court case, filed May, 24, 2010). Debtor's conduct was fraudulent.

Debtor argues that summary judgment on Airport Partners' § 523(a)(4) embezzlement claim would be inappropriate because he intended to repay the funds he took. He takes particular issue with Airport Partners' characterization of his conduct as "theft" or "stealing," preferring instead to use the term "unauthorized borrowing" to describe his misappropriation of funds. *See* Doc. Nos. 33-34, and 40. However, even assuming Debtor intended to repay Airport Partners at some later date, this fact is immaterial to the analysis of Airport Partners' embezzlement claim under § 523(a)(4).[6] As this Court explained in *Murray v. Woodman (In re Woodman)*, 451 B.R. 31 (Bankr. D. Idaho), "an intent to deprive the rightful owner of funds only temporarily and not permanently [does] not negate the element of [fraudulent] intent." *Id.* at 43 (citing *Applegate v. Shuler (In re Shuler)*, 21 B.R. 643, 644 (Bankr. D. Idaho 1982)). Any intent Debtor had

---

[6] Because this fact is immaterial, the documents in the possession of the Idaho State Police, which Debtor argues would support his credibility on the issue of intent to repay, are likewise immaterial, as held *supra*.

MEMORANDUM OF DECISION - 14

to make Airport Partners whole at some future point using later-acquired funds from Gunstream Commercial does not negate the initial intent to deprive Airport Partners of the Holly Plaza rent receipts with which Debtor had been entrusted, and to which Airport Partners was entitled.[7]

Based on the reasons set forth above, Airport Partners is entitled to summary judgment on its § 523(a)(4) embezzlement claim as to nondischargeability of the debt.

### b. Section 523(a)(6) - Willful and Malicious Injury

Airport Partners also seeks summary judgment on its claim under § 523(a)(6). Section 523(a)(6) excepts from an individual debtor's discharge debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Both willfulness and maliciousness must be proven to prevail under § 523(a)(6). *Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). The willful requirement is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* (quoting *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)). Under this

---

[7] Although "embezzlement" for purposes of § 523(a)(4) is governed by federal law, *see Littleton*, 942 F.2d at 555, the Court notes that under the Idaho Criminal Code it is not a defense to the crime of embezzlement (included in the definition of "theft") that the accused intended to restore the property taken, though such an intent may be considered in sentencing, *see* Idaho Code § 18-2406(3). The Court made a similar observation in *Shuler*. 21 B.R. at 644.

MEMORANDUM OF DECISION - 15

analysis, the debtor is charged with knowledge of the natural consequences of his actions. *Id.* (citation omitted). "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id.* at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

Airport Partners contends that Debtor's conversion of the rent receipts constituted willful and malicious injury under § 523(a)(6). Conversion is not *per se* a willful and malicious injury to property of another; it establishes only the wrongful assertion of dominion over another's personal property and does not necessarily decide the other requisite elements of § 523(a)(6). *See id.*; *Five Star Enters., Inc. v. Brock (In re Brock)*, 2009 WL 1559528, at *8 (Bankr. D. Idaho June 2, 2009) (citing *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1037-39 (9th Cir. 2001)). The Court must determine whether Debtor's misappropriation of funds, as established by the undisputed facts, meets the willful and malicious requirements of § 523(a)(6).

The injury complained of here is the loss of the Holly Plaza rent receipts. Debtor has admitted that he knew the rents belonged to Airport Partners when he took them to pay other expenses, and that he knew he had no authority to take those funds. He admitted it was a wrongful and dishonest act. It was Debtor's intent at the time he transferred the funds to deprive Airport Partners of money he knew belonged to it, even if only temporarily as he asserts. This was not a

MEMORANDUM OF DECISION - 16

negligent or reckless act. It was willful.

Debtor's acts were also malicious. He admitted that he knew at the time he transferred the funds that it was wrong to do so; he acted intentionally; Airport Partners was injured by being deprived of its rent receipts; and Debtor has provided no just cause or excuse for his conduct.

Based on these reasons, Airport Partners is entitled to summary judgment on its § 523(a)(6) claim as to the issue of nondischargeability of its debt.

### 4.  Attorney's Fees under LBR 7056.1

Finally, Airport Partners requests an award under LBR 7056.1(d) for attorney's fees incurred in preparing its Summary Judgment Motion and opposing Debtor's Stay Motion. Local Rule 7056.1(d) states:

> If a party fails to comply with the requirements of this rule or with applicable orders entered by the court related to motions or proceedings on summary judgment, or should it appear that affidavits are presented in bad faith or for purposes of delay, the court may continue the hearing and, after notice and a reasonable time to respond, may impose costs, attorney's fees and sanctions against a party, the party's attorney, or both.

Airport Partners asserts that it should be awarded attorney's fees because Debtor did not comply with the requirements of LBR 7056.1 (*i.e.*, Debtor's response was filed 11 days before the date of the hearing, rather than at least 14 days before the hearing as required by the local rule, and Debtor's second affidavit was filed the day of the hearing), and because Debtor's affidavit was filed in bad faith and for the purpose of delay.

MEMORANDUM OF DECISION - 17

The imposition of attorney's fees under LBR 7056.1 is dedicated to the discretion of the Court. Though Debtor's response was untimely, his conduct in this case does not appear to be of the type that would require the imposition of fees or other sanctions. Furthermore, as noted earlier, the Court is to make reasonable allowances for *pro se* litigants such as Debtor. *See supra* note 4 (citing *Kashani* and other authorities). In light of these circumstances, the Court will deny Airport Partners' request for fees under LBR 7056.1(d).

### C. Matters for Trial

At hearing, counsel represented that if Airport Partners prevailed on this Motion as to the § 523(a)(4) embezzlement and § 523(a)(6) causes of action it would abandon its remaining claims under § 523(a)(2) and (4). Consequently, the only issue now remaining for trial – which is set for January 18 and 19, 2012 – is the amount of the nondischargeable debt.

## CONCLUSION

Based on the foregoing, the Court will deny Debtor's Stay Motion and grant Airport Partners' Summary Judgment Motion under § 523(a)(4) and (6) as to nondischargeability. Airport Partners' request for attorney's fees will be denied. The Court will enter a separate order consistent with this Decision.

DATED: December 16, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 19